Mrs. Ernestine WALTON, Claude E. King, Jr., and Major Reynolds White, Appellants,

v.

The NASHVILLE, ARKANSAS SPECIAL SCHOOL DISTRICT NO. 1, a Public Body Corporate, and Elbert Thomas Moody, Superintendent, Appellees.

Charles McGHEE et al., Appellants,

v.

The NASHVILLE, ARKANSAS SPECIAL SCHOOL DISTRICT NO. 1, a Public Body Corporate, et al., Appellees.

Nos. 19062, 19061.

United States Court of Appeals Eighth Circuit.

Sept. 27, 1968.

**138**

Norman J. Chachkin, Little Rock, Ark., for appellants; John W. Walker, Little Rock, Ark., and Jack Greenberg, James M. Nabrit, III, and Michael M. Meltsner, New York City, on the brief.

Damon Young, of Shaver, Tackett & Jones, Texarkana, Ark., for appellees; Boyd Tackett and Nicholas H. Patton, Texarkana, Ark., on the brief.

Before VOGEL, BLACKMUN and LAY, Circuit Judges.

BLACKMUN, Circuit Judge.

These appeals, as have so many others recently, present public school integration problems. The site is Nashville, Arkansas. Nashville is a county seat town of about 4000 population in the southwestern part of the State.

■ In one case, our No. 19,061, Charles McGhee and his coplaintiffs sought, to use the language of the appellants' brief, "to have the all-Negro * * * school closed because it is inferior and inadequate." They were not successful in the district court. The appellants in that case, however, in January 1968 moved to dismiss their appeal on the ground that "said school will be closed at the end of the current school term (1967-68) and the Negro pupils assigned to the existing and superior predominantly white schools operated by appellee school district." This motion is granted and the appeal in No. 19,061 is dismissed.

The other case, our No. 19,062, is a suit by five nonreemployed negro teachers against the Nashville district and its superintendent of schools. It is not a class action. The named plaintiffs are Tommy Walton, former superintendent of the then separate and all-Negro Childress schools; Ernestine Walton, his wife; Claude E. King, Jr.; Major Reynolds White; and Altha Shaw. Mr. White's employment at Childress was not renewed by Nashville after the end of the 1965-66 school year. The employment of the other four plaintiffs was terminated by Nashville by letters dated May 22, 1967, which, pursuant to the requirements of Ark.Stat.Ann. § 80–1304 (b) (Supp.1967), notified the recipients of the non-renewal of their employment for the 1967-68 school year. The prayer is for injunctive relief, reinstatement, and reassignment and, alternatively, for damages and attorney's fees.

Jurisdiction is asserted, with respect to due process and equal protection, under the civil rights statutes, 42 U.S.C. §§ 1981 and 1983, and under 28 U.S.C. § 1343(3) and (4), and is not ques-

tioned. We are satisfied as to jurisdiction.

Chief Judge Harris, upon agreement of counsel, consolidated the two cases for trial. He denied the relief sought in the McGhee action. In the other case he dismissed, on motion of plaintiffs' attorneys, as to Tommy Walton and Altha Shaw for their failure to appear; denied relief on the merits to Ernestine Walton and White; dismissed as to King on condition the defendants tender Mr. King a contract for 1967-68; and retained jurisdiction. Plaintiffs Ernestine Walton, White and King appeal.

Counsel inform us that the condition imposed by the district court for plaintiff King was fulfilled and that King taught his subject of social studies in the integrated Nashville high school during 1967-68.

*Background.* Prior to and throughout the 1965-66 school year the defendant Nashville district and the Childress School District No. 39 had substantially identical geographical boundaries. Each had its own board. However, Childress was all-Negro in faculty, staff and student body and Nashville was all white. Local tax funds were divided between the two districts on the basis of the race of the taxpayers. The value of property owned by Negroes within the Childress boundaries was insubstantial in comparison with that held by whites. Each district received financial aid and assistance under HEW programs.

The legality of the overlapping racially segregated districts was challenged in a suit filed in federal court in December 1965. The court ruled that the double system denied negro citizens the benefits of a program receiving federal financial assistance, in violation of § 601 et seq. of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq., and also denied equal protection to school children in the districts. That action was eventually dismissed by stipulation upon the adoption of a court-approved desegregation plan which provided for the aboli-

tion of the Childress district as of June 30, 1966, for the consolidation of the two districts, for the providing by Nashville of equal educational opportunities to all children, for the inception of a freedom of choice plan for the September 1966 term, for the desegregation of faculty and staff, and

"Teachers and other professional staff will not be dismissed, demoted, or passed over for retention, promotion, or rehiring on the ground of race or color. If consolidation of the Nashville and Childress district and the unification of the schools result in a surplus of teachers, or if for any other reason related to desegregation it becomes necessary to dismiss or pass over teachers for retention, a teacher will be dismissed or passed over only upon a determination that his qualifications are inferior as compared with all other teachers in the consolidated system."

The operation of the freedom of choice plan in 1966 resulted in the transfer of a number of negro pupils to the Nashville high school for the 1966-67 term. As a consequence, the Nashville district decided to reduce the faculty of the temporarily continuing negro high school by at least one teacher. This reduction, however, was not effected.

The operation of the freedom of choice plan in 1967 resulted in most of the remaining negro pupils in the high school grades at Childress indicating a desire to attend Nashville for the 1967-68 term. As a consequence, the Nashville district abolished those grades at Childress and assigned all high school pupils to Nashville for the ensuing year.

The appeal in No. 19,062 thus focuses on the question whether Nashville's failure to continue the employment of appellants White, Mrs. Walton and King rested on racial considerations. The appeal embraces no complaint as to the workings of the freedom of choice plan. The record reveals the plan's effectiveness for the high school grades at Childress-Nashville. Not present here, therefore,

are the issues ruled upon in Green v. County School Bd. of New Kent County, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968); Raney v. Board of Educ. of the Gould School Dist., 391 U.S. 443, 88 S.Ct. 1697, 20 L.Ed.2d 727 (1968); and Monroe v. Board of Comm'rs of the City of Jackson, 391 U.S. 450, 88 S.Ct. 1700, 20 L.Ed.2d 733 (1968).

We bear in mind that Arkansas has no teachers' civil service or tenure law in any real sense. Teachers are employed in the State on a year-to-year renewal basis. § 80–1304(b); Shelton v. Tucker, 364 U.S. 479, 482, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960); Johnson v. Wert, 225 Ark. 91, 279 S.W.2d 274, 276 (1955); Smith v. Board of Educ. of Morrilton School Dist., 365 F.2d 770, 776 (8 Cir. 1966).

*Plaintiff-appellant Major Reynolds White.* In May 1966, a month or so prior to its court-ordered consolidation with Childress, the Nashville district began a study of the qualifications of the Childress teachers. Nashville Superintendent Moody asked Childress Superintendent Tommy Walton for transcripts of all the Childress teachers. Mr. Walton, at a meeting of his faculty, announced that teachers should provide their transcripts but he did not advise them why they were wanted or what would happen if they were not produced. The Nashville district already had transcripts of its white teachers from previous years and did not request new ones from them.

Mr. White was the only Childress teacher whose transcript was not on file or furnished. His employment was terminated by letter in June 1966 on the ground that he had not furnished a transcript. His position as social studies teacher at Childress was not filled at the start of the term there in September. A retired negro teacher was recalled in October for the place. She served until December when named plaintiff Shaw succeeded her. A first grade vacancy had occurred in the summer of 1966 in a Nashville elementary school but plaintiff White was not considered for it.

Mr. White, on direct examination, testified that he was a graduate of Philander Smith College; that he had nine hours of graduate work in education at the University of Arkansas; that he had about nine years' experience in teaching, seven of which were at Childress; that at the outset of his teaching career he placed his transcript in the Childress superintendent's office; that in the spring of 1966 no one on the Nashville board advised him by letter that providing another transcript was a condition of his continued employment; that at a faculty meeting, on less than a month's notice, Mr. Walton requested a transcript and told White that he had transcripts from everyone else; that White told Walton he would do his best to get a transcript but it would take time because it was the spring of the year; that he "didn't get the transcript until past June 12"; that Walton did not tell him that if he wanted to teach in Nashville he had to get the transcript; that he did not tell the other teachers either; that when he received the notice of termination he went before the board and explained the circumstances and had his transcript with him; that they took no action on his request for reconsideration; and that he conferred with Superintendent Moody about September 1, but was not offered reemployment at that time.

On cross-examination Mr. White stated that Mr. Walton had mentioned that the transcript "was needed in the office"; that this "was approximately several weeks before school was out"; that he didn't produce it "[b]ecause you must send to the schools, and they must send them to the individual of the personnel"; that "there was a question as to how my transcripts really were destroyed"; that there was a transcript on file in the State Department of Education; that perhaps it was eight weeks after he received the termination letter in June that he went to the board; that the board "never begged me to get

a transcript"; that he knew all schools require transcripts as a prerequisite for teaching; that he had one on file at Prescott, Arkansas, where he taught during the 1966-67 term; and that he had not applied at any school for work for the 1967-68 term.

Superintendent Moody testified that White never did furnish the Nashville district with a transcript; that Mr. Walton reported that White had not produced one "four or five" weeks after he had been asked to do so; and that he, Moody, had seen White "two weeks or three weeks before school was out," had asked him if he was going to get the transcript in, and had been told that he was.

The district court, in speaking orally from the bench at the close of the trial, observed that the testimony was "very clear that Mr. White was requested to furnish certain information"; that he "did not furnish that information"; that a teacher "has a certain responsibility to the school districts if they are to operate * * * under well-adopted and well-known procedures"; that the board and the superintendent followed those procedures; that for some reason not explained in his testimony "Mr. White did [not] see fit to submit the information"; that he proceeded to get a job elsewhere; and that the action of the superintendent and the board was not an abuse of authority.

White's argument here is that he had been employed by the Childress district as a social studies teacher for seven years; that his qualifications had never been questioned; that he was licensed; that a transcript is a condition for licensure; that, being unadvised of any contemplated faculty reduction and of the use to which transcripts would be put, he "did not know what appellees expected him to do to maintain his position as a teacher"; that he was discharged prior to appellees' assumption of control of Childress; that the only criterion used in comparing qualifications of white and negro teachers was

whether, as of May 1966, a transcript was in Moody's hands; that this criterion could apply only to negro teachers because all white teachers had transcripts on file; that the criterion thus rests on the prohibited basis of race; that this amounted to a deprivation of his livelihood without due process; that racial motivation is seen in the later events of his not being considered for his own vacancy and for the one at the elementary school, and in the district's not considering a white teacher for the social studies vacancy; that, because 1966 was the first year integration was undertaken in Nashville, the appellees owed a duty to publicize their plan and drive home to the teachers, "especially Mr. White," their rights and "how the district proposed to protect those rights"; and that these factors and others (racial pattern of previous school assignments; the necessity for litigation to change this; the misrepresentation to HEW that Nashville was in compliance with applicable guidelines; little progress toward faculty desegregation despite commitment to that principle; the undertaking of teacher reduction because of negro pupil transfers; failure to advise negro teachers of the desegregation plan; absence of formal notice of the contemplated faculty reduction; the fact reduction did not occur; and absence of an objective comparison of all teachers in the system) provide evidence that the board was influenced by improper racial considerations.

We are not so persuaded. One is tempted in this sensitive time to try to put a case together on inferences that a school district's every move and failure to move has a racial overtone. But vague implications of racial impropriety do not offset studied inaction on the complaining teacher's part. There are too many unfavorable factual features here for us to conclude that Major Reynolds White's non-reemployment was attributable to race. He just refused to comply with reasonable rules and procedures which were expected of all teachers and which were met and com-

plied with by each and every one of his faculty colleagues. For reasons of his own he chose not to act and had not acted even to the date of the trial, and he now seeks to excuse himself and to place his noncompliance under the protective shield of unallowable racial discrimination.

We note in particular that Mr. White more than once was asked to furnish his transcript; that, by his own testimony, he had several weeks' notice of the request to supply it; that, as a teacher, he has no excuse for not being aware that one's educational training and proof thereof are essential for employment; that, with Nashville's taking over the functions of the theretofore separate Childress district, Nashville was entitled to have his data; that every other Childress teacher, without exception, met the requirement and did so in the time prescribed; that his transcript was obtainable and was obtained for his later employment at Prescott; and that the other vacancy was in the first grade and he had no elementary certificate.

■■ A district has the right to investigate the competence and fitness of those whom it hires to teach in its schools. Shelton v. Tucker, supra, 364 U.S. at 485, 81 S.Ct. 247; Smith v. Board of Educ. of Morrilton School Dist., supra, 365 F.2d at 781–782. Requiring a transcript is a step, and a reasonable one, in that process.

We have read Mr. White's testimony on direct and cross-examination and can characterize it only as evasive, unresponsive and unilluminating. And we cannot fault the Nashville district, as the appellants would have us do, for endeavoring to get its files in order and transcripts in its possession as soon as possible once the elimination of Childress was programmed and even though the Childress district had a short period of life remaining. White's purported excuses—that the transcripts might have been destroyed; that he had a transcript on file with the state office; that he

had insufficient time; that it took a while to get a transcript in the spring; and that he was not advised of the purpose of the transcript—do not ring true and come unconvincingly from one who is a college graduate and possessed of several years' service in the schools of his state.

■ We agree with Judge Harris that Mr. White had a responsibility to act; that he failed to fulfill that responsibility; that no legitimate excuse for that failure was advanced; and that the action of the defendants constituted no abuse of their proper authority.

*Plaintiff-appellants Ernestine Walton and Claude E. King, Jr.* These two teachers, along with the non-appearing named plaintiffs Shaw and Tommy Walton, were victims of integration, of the consolidation of the Nashville and Childress districts, and of the workings of freedom of choice in the spring of 1967. As is so often the case, school consolidation made possible a reduction and a savings in the overall teaching staff. See, for example, Smith v. Board of Educ. of Morrilton School Dist., supra, 365 F.2d at 774–775.

Mrs. Walton had taught home economics at Childress. Her home economics counterpart at Nashville, Marie Stavely, was not terminated. But it is clear, and conceded by the appellants, that Mrs. Stavely "had considerably more experience than Mrs. Walton. * * *" Mr. King, who taught vocational agriculture at Childress, although terminated at the close of the 1966-67 term, was employed by Nashville prior to the beginning of the 1967-68 term as a vocational agriculture teacher; he thus was off the formal rolls of the successive districts for only a few weeks during the inactive summer and lost no teaching time.

Appellants Walton and King would base their case of racial discrimination in their terminations primarily on generalities and on factors not directly concerning themselves but asserted to be indicative of the district's racial ap-

proach. They mention the reassignment of Childress physical education instructor and high school basketball coach, Prentiss Counts, to a Childress elementary school and the failure to appoint him to vacancies at the Nashville high school. They mention that six vacancies (superintendent, principal, agriculture teacher, coach, and two assistant coach positions) occurred during the summer but the district did not "seriously [consider] any of the dismissed Negro teachers for either vacancy." They mention that Tommy Walton, who had had previous experience as Childress superintendent, was not considered for the vacancy in Superintendent Moody's position when Moody retired at the end of the 1966-67 term, and was not advised that he could apply or be considered for a junior high principal vacancy when it was to occur. They assert that there was no overall comparative evaluation of qualifications as the district's stated dismissal policy required. They mention that named but non-appearing plaintiff Shaw had his qualifications as a social science teacher compared with just one other teacher. All this, say the appellants, in the face of previous patterns, compels the conclusion that their terminations were racially motivated.

■ Chief Judge Van Oosterhout, in speaking for this court, has said, "Each case of this type must be decided upon the basis of its own peculiar facts." Brooks v. School Dist. of City of Moberly, 267 F.2d 733, 740 (8 Cir. 1959), cert. denied, 361 U.S. 894, 80 S.Ct. 196, 4 L.Ed.2d 151. We must follow that directive, but in so doing we are not unmindful of the historical background and the facts stressed by the appellants.

There is no real challenge here to the district's conclusion that the qualifications of Mrs. Stavely as a home economics teacher were superior to those of Mrs. Walton. Mrs. Stavely had the greater length of service, she had taught larger classes, and there is testimony as to her fine character. Appellants' case seems to rest on the proposition that Mrs. Walton's qualifications were not objectively compared with every other teacher in the Nashville system. See, for example, Rolfe v. County Bd. of Educ. of Lincoln County, 391 F.2d 77, 80 (6 Cir. 1968). The record, however, shows that this was not Mrs. Walton's position or desire at the vital selection time. She wanted to teach high school home economics. But the only teacher of that subject at Nashville possessed superior experience and qualifications. Mrs. Walton's next and only other choice was science. But the teaching position in that area was a combination of science and mathematics and the other teacher was better qualified in mathematics. We set forth Mr. Moody's testimony as to this on adverse cross-examination in the footnote.* This is not controverted. The plaintiffs did not choose to have Mrs. Walton take the stand. She was called by the defense but her testimony at that point of the trial did not relate to this subject.

The appellants would make something of the fact that Mrs. Walton was not offered the opportunity to fill a vacancy

---

* "Q. Did you compare Mrs. Walton's qualifications with those of the other teachers at Childress?

"A. Well, as I started to say, I talked to Mrs. Walton and she said that she would like to stay on in the school system and if she couldn't work in home economics she would like to work in science; and as I understand the way they have the school set up next year the seventh and eighth grade teachers would be departmentalized, and the seventh grade— one teacher will teach English and social science, and the other teacher will teach science and mathematics, and she apparently was not qualified for the mathematics part.

"Q. 'Apparently.' Did you compare her qualifications with others?

"A. Well, I asked her and she said she would teach science.

"Q. Did you compare her qualifications with those of the person who is going to teach science and math in the Childress school?

"A. Well, the other teacher has considerably more math."

which occurred in an elementary teaching position during the summer of 1967. But it is conceded that she did not possess an elementary certificate and that she had only a certificate for high school home economics. Appellants would excuse this by pointing out that coach Counts was reassigned from a high school position at Childress to an elementary school. We are not advised as to the certificate requirements for coaching in Arkansas, but coaching and home economics strike us as dissimilar. In any event, any irregularity in Mr. Counts' assignment should not afford valid precedent for a further irregularity. We suspect that Mr. Counts would also be a plaintiff here had he not been continued in employment in some capacity.

■ The defendants' choice of others over Mrs. Walton in home economics and in mathematics-science have adequate non-racial support in the record. The district court's findings to this effect are not clearly erroneous under Rule 52(a), Fed.R.Civ.P.

The complaint as to Mr. King also seems to center in an alleged failure to compare his qualifications with those of all other teachers in the system; in his not being promptly hired to fill a vocational agriculture vacancy created by the promotion of his counterpart at Nashville; and in his reemployment when it became apparent that a second agriculture teacher was required because of the large number of negro pupils transferring and registering for agriculture.

■ At the time Mr. King was terminated there was no vacancy in vocational agriculture at Nashville. The vocational agriculture teacher there was promoted only later. Although Mr. King was not named to succeed the Nashville teacher, he was soon employed to teach at Nashville and he was employed to teach the subject of his choice. This fact, it seems to us, far outweighs the inference and implication which the· appellants would draw. Mr. King has demonstrated no loss suffered during the short period of his non-reemployment by the defendant district. The court's factual conclusions as to him have adequate support in this record.

■ We are conscious in this case, as we have been in earlier ones, that the process of school integration is not easy and that there will be hurts and disappointments as integration is accomplished. Certainly, under the precepts of the *Brown* decisions, it has been too long delayed at Nashville. But we are told that it has now been fully accomplished there. That fact should be a source of satisfaction for all citizens, white as well as black. Those who are employment victims of the constitutionally required process should not immediately jump to the conclusion that their predicament is necessarily the result of racial considerations. They have every right to demand and to be shown that race is not the criterion by which employment is granted or denied. They must, however, face the fact that integration tends to do away with expensive and unnecessary duplication for districts already too short of funds and that often some persons will be terminated. Fortunately these are not days of economic depression, and hardship for a qualified person should be minimal. We have the impression from this record that this appeal rests on nothing more substantial than inference and implication. Inference and implication are sometimes justified but a case must be stronger than this one before we reverse on inference and implication alone.

What we say and hold here is by no means a retreat from the pronouncements of this court as to faculty integration and assignment in the several cases decided in recent years. See, for example, Smith v. Board of Educ. of Morrilton School Dist., supra, 365 F.2d 770 (8 Cir. 1966); Clark v. Board of Educ. of the Little Rock School Dist., 369 F.2d 661, 669–670 (8 Cir. 1966); Kelley v. Altheimer, Arkansas Public School Dist., 378 F.2d 483, 491–494 (8 Cir. 1967);

Yarbrough v. Hulbert-West Memphis School Dist., 380 F.2d 962 (8 Cir. 1967); Kemp v. Beasley, 389 F.2d 178, 186–190 (8 Cir. 1968); Jackson v. Marvell School Dist., 389 F.2d 740 (8 Cir. 1968). The facts here simply do not add up to a showing of discrimination. And when the facts do not do this the teacher's case must necessarily fall.

In view of these conclusions, appellants are not entitled to attorney's fees. See Kemp v. Beasley, 352 F.2d 14, 23 (8 Cir. 1965); Clark v. Board of Educ. of the Little Rock School Dist., supra, 369 F.2d at 670–671; Jackson v. Marvell School Dist., supra, 389 F.2d at 747.

The judgment in No. 19,062 is affirmed.