457 F.2d 1268
 4 Fair Empl.Prac.Cas. 591, 4 Empl. Prac. Dec. P 7745
Lois THOMAS et al., Plaintiffs-Appellants,
v.
The BOARD OF EDUCATION OF the PLUM BAYOU-TUCKER SCHOOL
DISTRICT NO. 1, WRIGHT, ARKANSAS, et al.,
Defendants-Appellees.
 No. 71-1436.
 United States Court of Appeals,
Eighth Circuit.
 March 30, 1972.
 
 Philip E. Kaplan, Walker, Kaplan & Mays, Little Rock, Ark., Jack Greenberg, Norman J. Chachkin, Sylvia Drew, John E. Bishop, New York City, for plaintiffs-appellants.
 Jeff Starling, Coleman, Gantt, Ramsay & Cox, Pine Bluff, Ark., for defendants-appellees.
 Before VAN OOSTERHOUT, Senior Circuit Judge, STEPHENSON, Circuit Judge, and REGISTER, Senior District Judge.*
 STEPHENSON, Circuit Judge.
 
 
 1
 This action was brought in the United States District Court for the Eastern District of Arkansas under 28 U.S.C. Sec. 1342(3) and (4), claiming relief pursuant to 42 U.S.C. Secs. 1981, 1983, and the rights, privileges and immunities guaranteed by the due process and equal protection clauses of the 14th amendment to the United States Constitution.
 
 
 2
 Appellants appeal from a judgment of Judge Oren Harris dismissing their claims for mandatory injunctive relief against the appellees seeking reinstatement of certain of the appellants as teachers. Further relief was sought for alleged discriminatory action by the appellees in teacher evaluation, salary schedules and hiring policies. The trial court held that the appellants' allegations as to the evaluation process, salary schedule, hiring policy and other discrimination were all without merit. We affirm.
 
 BACKGROUND
 
 3
 The problems in this case are primarily factual. For that reason, the historical background of the school district and its operation will clarify the issues to be resolved. Plum Bayou-Tucker School District No. 1 is a small rural school district in Arkansas. Prior to the school year 1965-66 the system was completely segregated, students and faculty. Plum Bayou School in Wright, Arkansas, was operated for white students in grades 1 through 12. Tucker-Rosenwald School, located eight miles away at Tucker, Arkansas, was operated for black students in grades 1 through 12. During the school year 1965-66, the high schools in the district were operated on a freedom of choice basis. Beginning in school year 1966-67, the district voluntarily unitized its high schools. Tucker-Rosenwald school was closed and the Plum Bayou school became the integrated high school for the system. Elementary schools in the district continued to operate on a segregated basis until the 1969-70 school year when the Tucker-Rosenwald elementary school was closed and the Plum Bayou school became the integrated site. Presently, the entire system is completely integrated as to students and faculty. From the record it appears that there are no major problems stemming from the 1966-67 integration of the district's high schools. However, when the elementary schools were voluntarily unitized in 1969-70, it became necessary to reduce the number of elementary teachers from 15 to 10. This reduction in teacher personnel generated the principal issues now before us.
 
 THE LAW
 
 4
 As earlier stated, the factual pattern is of primary importance in this case. Both appellants and appellees rely on Moore v. Board of Education of the Chidester School District #59, 448 F.2d 709 (C.A.8, 1971). Appellees contend that Chidester would require the teachers to prove discrimination. On the other hand, appellants urge that the criteria set out in Chidester would require the burden of proof to shift, and that the board, under the facts in this case, must show that they have not discriminated. We agree with appellants. However, there is no indication in the record of the trial that the burden of proof was improperly allocated. In any event, we are satisfied that the school board has shown by clear and convincing evidence that their policies and procedures were not disciminatory.[1]
 
 
 5
 This case is quite similar to Chidester. In Chidester this Court was concerned with the problem of a reduction of faculty in a school system as a result of unification of its schools pursuant to Brown I. Brown v. Board of Education of Topeka, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954). Chidester delineates the standards which a school board must meet in its teacher evaluation plan. We said at 448 F.2d 713:
 
 
 6
 ". . . we now make clear that a board of education is obligated to use objective nondiscriminatory standards in the employment, assignment, and dismissal of teachers. A board may also consider established and previously announced non-discriminatory subjective factors in making such decisions."
 
 
 7
 In addition, we cited with approval Singleton v. Jackson Municipal Separate School District, 419 F.2d 1211, 1218 (C.A.5, 1970) for the proposition that a teacher possessing the requisite minimum qualifications is entitled to the first available job without comparison with new applicants. Further, we reiterated our position in Walton v. Nashville, Arkansas Special School Dist. No. 1, 401 F.2d 137 (C.A.8, 1968) and Brooks v. School District of City of Moberly, Missouri, 267 F.2d 733 (C.A.8, 1959), that full and fair evaluation using definite non-discriminatory standards is essential before dismissals can occur.
 
 
 8
 This Court has held that a differential in salaries based solely on race or color is prohibited under the 14th amendment. Morris v. Williams, 149 F.2d 703 (C.A.8, 1945) at 708. The Court in Morris v. Williams stated:
 
 
 9
 "The crucial question in this case is whether the evidence demonstrates that there existed in Little Rock before the trial and continuing at the time of the trial a policy or custom of paying negro teachers less for comparable service than was paid to white teachers solely on the basis of race or color." id. 149 F.2d at 708.
 
 
 10
 We reaffirmed this position most recently in Arkansas Education Association v. Board of Education, Portland Arkansas School District, 446 F.2d 763 (C.A.8, 1971).
 
 
 11
 In addition, pursuant to Fed.R.Civ.Proc. 52(a) we give great weight to the findings of the trial court. The scope of appellate review is limited to determining whether the findings of the trial court are clearly erroneous. Rosenburg v. United States, 422 F.2d 341, 342 (C.A.8, 1970). Each case of this type must be decided upon the basis of its own peculiar facts. Brooks v. School District of City of Moberly, 267 F.2d 733, 740 (C.A.8, 1959).
 
 THE CLAIMS
 
 12
 Lois Thomas. Mrs. Thomas is a black, certified teacher who began her teaching in the all black Tucker-Rosenwald elementary school. Her contract was terminated at the end of the 1968-69 school year. Mrs. Thomas alleges discrimination in the evaluation process used by the school system in reducing its staff after unification. She seeks reinstatement as a teacher and monetary damages for the period in which her employment was terminated.
 
 
 13
 James Bradshaw became the Superintendent of the Plum Bayou-Tucker Rosenwald School District in 1966 when the voluntary integration process was begun. This school system led the way to unitization in the Arkansas schools. There are positive indications in the record that Bradshaw could foresee that there would be problems in unitization. He began early to prepare a fair and impartial method of evaluating teachers so that the ten teachers best qualified would be retained. Bradshaw consulted administrators, board members, legal counsel and the teachers. Because of objections on the part of black teachers at the Tucker-Rosenwald School he decided not to use a completely objective, standardized test. In the alternative, he chose an evaluation system that would take the classroom performance of teachers into account. This method was preferred by the teachers. Bradshaw spent a full year working on his evaluation format and ultimately had it approved by the school board. Testimony at trial shows that Mr. Bradshaw was the only person in the school district who could objectively evaluate all fifteen teachers. This he did over a period of three years. Included in the evaluation was Bradshaw's personal observance of each teacher as the teacher performed his classroom duties. From his periodic visits to each teacher's classroom, Mr. Bradshaw evaluated the teachers on the teacher evaluation form. Expert testimony showed that the form was essentially the same as that recommended by the Department of Health, Education and Welfare.
 
 
 14
 Based on the ranking obtained from these evaluation forms, one white teacher and four black teachers were released. This resulted in five white teachers and five black teachers being retained on the staff. Subsequently, one white teacher who had been retained resigned. The board then rehired the teacher who had ranked eleventh on the evaluation, who incidentally was a black. We note that this procedure conforms to the rule set out in Singleton v. Jackson Municipal Separate School District, supra. Thus, the present faculty at Plum Bayou-Tucker Rosenwald elementary school consists of six black teachers and four whites. It is important to note, and the record shows, that of the fifteen teachers who were evaluated, only Lois Thomas complains of discrimination. Mrs. Thomas ranked thirteenth in the evaluation. There is ample evidence in the record that Superintendent Bradshaw made an honest effort to establish a fair and reasonable evaluation process based on objective standards and previously announced non-discriminatory subjective factors. The record supports the trial court's view that this was a valid evaluation process and that it was applied without discrimination. See Brooks v. School District of City of Moberly, Missouri, supra, 267 F.2d at 739; Walton v. Nashville, Arkansas Special School District No. 1, supra, 401 F.2d at 143 and Chidester, supra, 448 F.2d at 712, 713.
 
 
 15
 Mrs. Thomas also claims the school district discriminated against her in failing to consider her for a position that became available in the same year she was terminated, in violation of Chidester, supra at 712; Singleton, supra at 1218.[2] A black from outside the district was hired. The testimony was conflicting. However, the record supports the superintendent's explanation that she was not considered for the position because she did not have an application on file at the County Superintendent's office and she did not apply for the position until after it had been filled.
 
 
 16
 Lucreasia Evans. Lucreasia A. Evans is now and has been employed by this school district for 23 years. She is one of three black teachers (and 5 whites) on a federally funded program called Title I. Mrs. Evans alleges that she was discriminated against in not being considered for the position of Title I Health Coordinator. Moreover, she alleges that the phrase in her Title I contract which states "payable if funds are available" is discriminatory. Finally, she claims discrimination in that she was not reimbursed for attending summer school. Mrs. Evans seeks an order requiring the school district to consider her for the job of Title I Health Coordinator and back pay for the period in which she was not so employed.
 
 
 17
 The Plum Bayou-Tucker Rosenwald School System employs teachers under two types of contracts. The first is a normal contract of employment with funds coming from the school system. The second is the federally funded contract called Title I. Both these contracts contain a standard clause that the contract is payable as funds are available. Thus, there is no discrimination between employees on Title I contracts and employees on the regular contract. Moreover, there is ample evidence to show that if Title I funds become unavailable, the school system automatically would place a teacher on a regular contract. This was, in fact, done when Title I funds became unavailable in the department of mathematics. We see no merit in Mrs. Evans contention that she was discriminated against because she was employed under a Title I contract rather than a normal contract.
 
 
 18
 The position of Health Coordinator is a Title I position Mrs. Evans claims she should have been considered for that position when it became available in the school year 1965-66. However, Mrs. Evans admitted that she had never applied for the job. Superintendent Bradshaw testified that he did not consider Mrs. Evans for the job because he had no reason to know that she wanted it. He also testified that no teacher has ever been reimbursed for expenditures made in attending summer school. As we view the facts, Mrs. Evans' allegations are without merit.
 
 
 19
 Asive Thomas. Mr. Thomas is a black who was first employed at the all black Tucker-Rosenwald elementary school in 1966-67. He was hired as a social studies teacher. Prior to unification, at the end of the 1967-68 school year, he was released for his failure to perform adequately as a social studies teacher. Mr. Thomas alleges that he was released due to racial discrimination rather than for the reasons set forth by the appellees. The record clearly shows that he no longer wishes to work for the Plum Bayou-Tucker School system. He seeks monetary damages for damage incurred during the year 1968-69 on account of his dismissal. Thomas was released on the basis of his weak performance in teaching social studies but contends that he should have been placed at the high school as a physical education instructor and coach. Coaching was his primary area of interest. The high school employs no one solely as an athletic coach, requiring teachers who coach. Physical education teachers must also teach social studies. The record shows that one white who was hired to teach physical education and social studies at the high school was likewise subsequently released for his inadequacy in the area of social studies. Indeed, the black teacher who presently holds the job of physical education instructor and coach also teaches social studies. The record fails to establish racial discrimination in the original release of Thomas as a social studies teacher.
 
 
 20
 Salary. The trial court requested that the school board submit a salary schedule of all teachers in the system. The schedule had been adopted in 1966-67 when Mr. Bradshaw became superintendent. The record shows that the schedule, which is above the minimum state standards, has been applied equally to all teachers. The trial court found in its unreported memorandum opinion that the salary schedule consisted of a minimum salary based on college degree, certification and diploma of advanced study with an annual increase for up to ten years of service and a maximum salary on the same basis with an additional $900 per year for extra duty beyond the normal classroom work. The evidence supports the trial court's finding that this salary schedule was applicable to all teachers on the same basis. We find no merit in fact or law for the plaintiffs' contention of discrimination in salaries. See Arkansas Education Association v. Board of Education of the Portland, Arkansas School District, supra, 446 F.2d at 769.
 
 
 21
 Non-teaching positions. The final contention which must be considered is that which relates to the school district's alleged failure to offer equal employment and earning opportunities in non-teaching positions. The testimony on this issue related only to school bus drivers. One opening has been available since 1966. A black applied for the job, was hired, and is still in the appellees' employ as a driver. The school district now has two black and three white bus drivers. The record supports the trial court's conclusion that appellants' contention in this regard is without merit.
 
 Conclusion
 
 22
 It is our conclusion that the school board has shown by clear and convincing evidence that there was no discrimination against these appellants as charged.
 
 
 23
 Judgment affirmed.
 
 
 
 *
 Judge Register died prior to the completion of this opinion. He concurred in the result at oral conference but, by reason of his death, had no opportunity to examine the opinion in its final form
 
 
 [1]
 In Chidester, supra, we said at 711: "The failure of the District Court to properly assign the burden of proof would be grounds for remand unless we were satisfied that the school district had met that burden."
 
 
 [2]
 This issue was not discussed in the trial court's memorandum opinion. Neither did appellants move for amended findings. However, due to the length of time this cause has been on file, we have canvassed the record in order to dispose of all issues raised on appeal